Matter of New York State Police v Galliher

2026 NY Slip Op 02510

April 24, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

IN THE MATTER OF NEW YORK STATE POLICE, PETITIONER-APPELLANT,

v

MATHEW J. GALLIHER, RESPONDENT-RESPONDENT.

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department

Decided on April 24, 2026

109 CA 25-00442

Present: Bannister, J.P., Montour, Smith, Nowak, And Delconte, JJ.

LETITIA JAMES, ATTORNEY GENERAL, ALBANY (SARAH COCO OF COUNSEL), FOR PETITIONER-APPELLANT.

LUIBRAND LAW FIRM, PLLC, LATHAM (KEVIN A. LUIBRAND OF COUNSEL), FOR RESPONDENT-RESPONDENT.

FRESHFIELDS US LLP, WASHINGTON, DC (JENNIFER B. LOEB OF COUNSEL), FOR BRADY CENTER TO PREVENT GUN VIOLENCE AND GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE, AMICI CURIAE.

Appeal from an order of the Supreme Court, Oneida County (Peter M. Rayhill, J.), entered February 25, 2025, in a proceeding pursuant to CPLR article 63-A. The order denied the petition for an extreme risk protection order.

[*1]

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the application is reinstated, the application insofar as it seeks the issuance of a final extreme risk protection order is granted, and the matter is remitted to Supreme Court, Oneida County, for further proceedings in accordance with the following memorandum: In this proceeding pursuant to the Extreme Risk Protection Act (see CPLR art 63-A), petitioner appeals from an order that, after a hearing, denied a final extreme risk protection order (ERPO) against respondent. We reverse.

Respondent and several other Department of Corrections and Community Supervision (DOCCS) correction officers participated in the gang assault of a restrained incarcerated individual (victim). Respondent and the other correction officers failed to activate their body-worn cameras during the assault in violation of DOCCS policy, but the Office of Special Investigations was able to retrieve "recall video" that depicted the assault without audio. The victim ultimately died as a result of the injuries he sustained.

Shortly thereafter, petitioner filed the instant application seeking a temporary and final ERPO based upon respondent's involvement in the victim's death. On the same day that the application was filed, Supreme Court denied the temporary ERPO and scheduled a final ERPO hearing. At the hearing, the court heard testimony from a DOCCS investigator tasked with investigating misconduct within correctional facilities across the State and received the recall body-worn camera footage as exhibits. Respondent invoked his Fifth Amendment right against self-incrimination beginning with the first question, and continued to invoke that right on each question thereafter.

Following the hearing, the court issued a written decision and order in which it concluded that, "[a]s troubling as the evidence provided is, it does not demonstrate that [r]espondent is likely to engage in conduct that would result in serious harm to himself or others." The court thus denied the final ERPO.

At the outset, we note that respondent was criminally charged for his role in the victim's [*2]death, but was ultimately acquitted of all charges against him. Inasmuch as respondent was acquitted and is thus not prohibited as a result of that prosecution from possessing any firearms, rifles, or shotguns (see Penal Law § 400.00 [1] [c]), this appeal is not moot (cf. Matter of New York State Police v Kingsley, — AD3d —, —, 2026 NY Slip Op 01668, *1 [4th Dept 2026]).

On the merits, we agree with petitioner that the court erred as a matter of law in refusing to issue a final ERPO. At a hearing to determine whether a final ERPO should be issued, "the petitioner shall have the burden of proving, by clear and convincing evidence, that the respondent is likely to engage in conduct that would result in serious harm to himself . . . or others, as defined in paragraph one or two of subdivision (a) of section 9.39 of the mental hygiene law" (CPLR 6343 [2]). Pursuant to Mental Hygiene Law § 9.39 (a), " '[l]ikelihood to result in serious harm' . . . shall mean," as relevant here, "a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm" (§ 9.39 [a] [2]).

In determining whether the petitioner has met their burden, "[t]he court may consider," inter alia, "any evidence submitted by the petitioner, any evidence submitted by the respondent, [and] any testimony presented" (CPLR 6343 [2]), and "shall also consider the [eight] factors set forth in [CPLR 6342 (2) with respect to whether to issue a temporary ERPO]" (id. [emphasis added]). While those factors are non-exhaustive, the first factor is a prior "threat or act of violence or use of physical force directed toward self, the petitioner, or another person" (CPLR 6342 [2] [a]).

Here, at the outset of the hearing, the court recited the appropriate standard set forth in CPLR 6343 (2) and Mental Hygiene Law § 9.39 (a) (2), and expressly concluded following the hearing that the evidence established that respondent "participated with others in an act of violence against a New York State DOCCS inmate in restraints that caused serious physical harm and, ultimately, death to that individual." Nonetheless, the court held that respondent was not "likely" to engage in conduct that would result in serious harm to himself or others, relying upon the Merriam-Webster Dictionary's definition of "likely," rather than the express statutory definition in Mental Hygiene Law § 9.39 (a) (2) as incorporated into the statutory scheme. That was error.

As set forth above, the burden was on petitioner under the circumstances here to establish, by clear and convincing evidence, that respondent posed "a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm" (Mental Hygiene Law § 9.39 [a] [2]; see CPLR 6343 [2]). Petitioner met that burden by establishing that respondent actively participated in the assault of a restrained incarcerated individual by grabbing the victim by the chest and holding him down while other officers kicked the victim in the abdomen and groin (see CPLR 6342 [2] [a]). Indeed, that conduct is particularly egregious in this case because "DOCCS regulations require correction officers to exercise '[t]he greatest caution and conservative judgment' in determining whether physical force against an inmate is necessary" (Rivera v State of New York, 34 NY3d 383, 391 [2019], quoting 7 NYCRR 251-1.2 [a]), inasmuch as "[c]orrection officers are tasked with the formidable and critical responsibility of protecting the safety of inmates and coworkers while maintaining order in correctional facilities" (id. at 385). Respondent adduced no evidence to the contrary at the hearing.

To the extent that the court appears to have implicitly concluded that it is inappropriate to issue an ERPO based upon past acts of violence as opposed to threats of future violence, we note that CPLR article 63-A does not require either an explicit threat or expert testimony to predict a respondent's future conduct (see CPLR 6342 [2]; Matter of R.M. v C.M., 226 AD3d 153, 162 [2d Dept 2024]). To the contrary, each of the eight factors that the court "shall" consider in determining whether to issue a final ERPO (CPLR 6343 [2]) is based upon past conduct (see CPLR 6342 [2]). Likewise, the court's tacit conclusion that an ERPO should not be issued where the parties have other civil or criminal remedies is similarly without merit. Although a respondent may ultimately face criminal charges for their conduct, the mere prospect of criminal charges does not preclude the issuance of an ERPO. If that were the case, no ERPO could ever be issued against a perpetrator of domestic abuse who owned firearms, because the perpetrator could be prosecuted criminally. That is simply not the law in New York (see Matter of Orangetown Police Dept. v Cashell, 238 AD3d 1152, 1154-1155 [2d Dept 2025]; see generally [*3]R.M., 226 AD3d at 163).

We therefore reverse the order, reinstate the application, grant the application insofar as it seeks the issuance of a final ERPO, and remit the matter to Supreme Court for further proceedings pursuant to CPLR 6343 (3).

Entered: April 24, 2026

Ann Dillon Flynn

Clerk of the Court